Commonwealth *v.* Lomax, Appellant.

Submitted June 9, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Elaine DeMasse* and *John W. Packel,* Assistant Defenders, and *Benjamin Lerner,* Defender, for appellant.

*Guy R. Sciolla, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., September 22, 1975:

Appellant, Gerald Lomax, was convicted of rape[1], following a jury trial on March 19-22, 1974. Post-verdict motions were heard and denied on August 22, 1974, and appellant was sentenced to two to six years imprisonment. This direct appeal followed.

The only issue raised on this appeal is whether the lower court committed reversible error in the charge to the jury. The contested portion of the charge is that which dealt with the identification of appellant by the victim.

Trial testimony revealed that on February 23, 1973, at approximately 12:50 p.m., the appellant approached the victim's house to ask about buying her car, which was parked in front of the house. After a few minutes of discussion, appellant took a gun from his pocket, pushed the victim into the house, ordered her to lie down in the living room and raped her.

The witness stated that her assailant then asked her name and said that his was "Jerry, Gerald, something like that." (NT 48) She also testified that the appellant was wearing a dark blue "ski" jacket, and a black cap with a bill in front. Moreover, she identified two Commonwealth exhibits as a ring similar to that worn by appellant on the day of the rape and a jacket like the blue

---

1. Act of June 24, 1939, P.L. 872, §721 (18 P.S. §4721).

"ski" jacket she had previously described. The complainant stated that she had never seen her assailant prior to the date of the incident, and estimated that the rape occurred in approximately a ten-minute period.

Subsequent to the rape, the victim was examined at the Philadelphia General Hospital. Laboratory tests confirmed the presence of spermatozoa in her vagina, cervix and vulva.

On March 5, 1973, the complainant went to the door in response to the doorbell and saw the appellant waiting outside. She immediately called her sister and the police, who arrived about ten minutes later. By then, however, the appellant had gone. The sister contacted another relative, Joan Wilkerson, who agreed to stay with the victim. After the police officer left, Mrs. Wilkerson noticed a man slowly drive his car by the house, return, and park across the street. She copied the license number and notified the police.

Mrs. Wilkerson and the victim thought it best to stay at the former's house. As they drove there, they again saw the car and its driver. The complainant stated that, "it looked like the same man, because he had on the same cap. . . ." (NT 64)

The next occasion on which the complainant saw appellant was at a police station line-up, held about two weeks later. She immediately identified appellant as her assailant. Later, she identified him at the preliminary hearing and at the suppression hearing, as well as at trial. Mrs. Wilkerson also identified appellant, as the driver of the car[2].

Following the conclusion of the testimony, the trial judge charged the jury concerning the identification of appellant. It is the appellant's contention that the charge does not comply with the standards enunciated in *Com-*

---

2. Testimony of other witnesses is not relevant to the allegation of error in the charge, which concerns only the *victim's* identification of appellant.

*monwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954), because the jury was not given a cautionary instruction. The *Kloiber* court stated: "Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution— indeed the cases say that 'his [positive] testimony as to identity may be treated as the statement of a fact': *Commonwealth v. Ricci,* 161 Pa. Superior Ct. 193, 195, 54 A. 2d 51; *Commonwealth v. Sharpe,* 138 Pa. Superior Ct. 156, 159, 10 A.2d 120. For example, a positive, unqualified identification of defendant by one witness is sufficient for conviction even though half a dozen witnesses testify to an alibi: (citations omitted).

"On the other hand, where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution." 378 Pa. at 424, 106 A.2d at 826.

The appellant contends that the cautionary instructions which *Kloiber* suggests be given to the jury in situations where the witness has not clearly seen the defendant are mandated in the instant case. He further asserts that the failure of the lower court to have given the cautionary charge is reversible error. We do not agree.

In the instant case, the victim of the rape spoke with appellant in broad daylight for several minutes before he entered her house. Then, with a gun pointed at her, she observed the appellant for ten minutes during the rape. Two weeks later, she saw the appellant at her door and later observed him driving his car near her house. At each pre-trial proceeding and the line-up, the victim

positively identified appellant as her assailant. Her testimony at trial also established that appellant was the rapist, and her opinion and identification did not change as a result of cross-examination.

The identification in the instant case was clearly sufficient to permit the jury to accept it as a statement of fact. There was no need for a cautionary instruction.[3] Once the *Kloiber* standards which apply have been given, the weight to be accorded the identification testimony is properly left to the jury. *Commonwealth v. Pitts,* 450 Pa. 359, 301 A.2d 646 (1973).

The judgment of sentence is affirmed.

---

3. Appellant relies upon *Commonwealth v. Mouzan,* 456 Pa. 230, 318 A.2d 703 (1974), and *Commonwealth v. Pitts,* 450 Pa. 359, 301 A.2d 646 (1973), as support for his belief that the cautionary instruction should have been given in the instant case. His reliance is misplaced. In both cases, there was evidence upon which the jury could find that the lighting conditions at the time of the crime were so poor that the identification could have been improper. The jury could not find poor lighting conditions in the instant case.