J-S67024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
            :            PENNSYLVANIA
            :
        v.            :
            :
            :
ZAKI JAMAR HOLMES        :
            :
      Appellant      :   No. 822 MDA 2019

Appeal from the Judgment of Sentence Entered March 1, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000131-2017

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:         **FILED SEPTEMBER 28, 2020**

Appellant, Zaki Jamar Holmes, appeals from the March 1, 2018 Judgment of Sentence entered in the York County Court of Common Pleas following his conviction of one count each of Robbery, Person Not to Possess a Firearm, Terroristic Threats, Simple Assault – Physical Menace, and Theft by Unlawful Taking.[1] He challenges the sufficiency and weight of the evidence. After careful review, we affirm.

We glean the following factual and procedural history from the trial court's Opinion and our *de novo* review of the record. Appellant was friends with Elizabeth Smith's children for over ten years. On the evening of October 23, 2016, he stopped by Ms. Smith's house in York City for a short visit with

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(iii), 6105(a)(1), 2706(a)(1), 2701(a)(3) and 3921(a), respectively.

her son. Approximately 15 minutes after leaving, Appellant returned to the home with another man, each of whom had a hooded sweatshirt ("hoodie") tied tightly around his face. Ms. Smith, her two daughters, Croatia Coleman and Tatijuana Coleman, and five of her grandchildren were in the living room at the time. Pointing guns at the women, the men demanded their wallets and purses. One of the men grabbed a cell phone from Croatia's hands while she was on a call. Ms. Smith refused to give the men her wallet, so Appellant pointed the gun at the grandchildren and threatened to shoot them. She then gave him her wallet, which contained $242 in cash, and the men ran out of the house. Ms. Smith immediately called 911.

Although Appellant's face had been hidden by the tied hoodie, Ms. Smith recognized him by his voice, build, and sweatshirt. When police officers arrived shortly after the robbery, she described the assailants to York City Police Officer Chistopher Hustid and showed him a picture of Appellant from Facebook. Croatia and Tatijuana refused to speak to Officer Hustid: they would not tell him their names; Croatia refused to tell him the cell phone number of the phone that was stolen from her hand; and they both refused to discuss the robbery with him.

The Commonwealth arrested Appellant on November 1, 2016, and charged him with the above crimes. At the preliminary hearing on January 4, 2017, Ms. Smith testified that Appellant wore a dark gray hoodie during the robbery and the other man wore a black hoodie.

A jury trial proceeded on January 3, 2018, at which Ms. Smith and Officer Christopher Hustid testified. Ms. Smith testified that she has known Appellant for between 10 to 15 years, and had recognized Appellant during the robbery from his voice and sweatshirt because he had been at her house approximately 10 to 15 minutes before the robbery. She also said that the other man had on a gray hoodie while Appellant's sweatshirt was black and that Appellant did not have facial hair that day.

On cross-examination, when presented with her preliminary hearing testimony, Ms. Smith corrected her trial testimony and said it was Appellant in the dark gray hoodie and the other man in the black hoodie.[2]

Officer Hustid testified regarding his response to the incident. On cross-examination, he stated that Ms. Smith told him on the day of the incident that Appellant had a thin moustache.

The jury found Appellant guilty of all charges. The court deferred sentencing pending a pre-sentence investigation ("PSI") report. Following consideration of the PSI Report and argument of counsel, the court sentenced

---

[2] Croatia Coleman appeared at trial as an uncooperative witness pursuant to the Commonwealth's subpoena. She testified she was not really paying attention during the robbery because she was on the phone until one of the two men snatched it from her. She also stated that she did notice one of the men threatening to shoot her children. She provided no testimony regarding the identity of the robbers except to say they were two males. She stated she had known Appellant for approximately 14 years, since she was a child, and had seen him just a month before trial in a passing car and "synced" with him. N.T. Trial, 1/3/18, at 85-89.

The Commonwealth had also issued a subpoena to Tatijuana to testify at trial but she did not appear. *Id*. at 107.

Appellant to a standard range sentence of eight to sixteen years' incarceration. Appellant filed a Post-Sentence Motion, which the court denied.

Appellant timely appealed. However, this Court ultimately quashed his appeal because of his failure to file a docketing statement in compliance with Pa.R.A.P. 3517. Appellant then filed a Petition for Post-Conviction Collateral Relief, and on April 22, 2019, the trial court reinstated his appeal rights *nunc pro tunc*.

Appellant filed a counseled Notice of Appeal on May 17, 2019. On May 21, 2019, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) Statement within 21 days. Appellant did not file a Rule 1925(b) Statement. The trial court filed a Pa.R.A.P. 1925(a) Opinion, observing that Appellant's counsel provided *per se* ineffective assistance by failing to file the ordered Rule 1925(b) Statement. This Court agreed and on December 26, 2019, remanded the case back to the trial court for counsel to file a Rule 1925(b) Statement *nunc pro tunc* and for the trial court to file a responsive Rule 1925(a) Opinion.

On January 23, 2020, the trial court appointed new appellate counsel. After receiving an extension, Appellant filed his Rule 1925(b) Statement on April 7, 2020, challenging the sufficiency and weight of the evidence

supporting his identity as one of the assailants. The trial court filed a Rule

1925(a) Opinion on May 18, 2020.[3]

Appellant raises the following issues for our review:

1. Whether there existed sufficient evidence that the Appellant was the individual that committed the Robbery and related offenses as only the sound of his voice was used to describe him and conflicting descriptions of the sole identifying witness as to his clothing and facial hair existed?

2. Whether the verdict was against the weight of the evidence as only the sound of the Appellant's voice was used to describe him and conflicting descriptions of the sole identifying witness as to his clothing and facial hair existed?

Appellant's Br. at 4.

## Sufficiency of the Evidence

In his first issue, Appellant does not challenge the evidence that

supports the statutory elements of his crimes. Rather, he challenges only the

evidence supporting his identification as one of the assailants. *See* Appellant's

Br. at 13 (stating "[h]erein, we have disparity between facial hair of the

accomplice and the hoodie being worn." (no citation to record provided)).

"A claim challenging the sufficiency of the evidence is a question of

law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We

review claims regarding the sufficiency of the evidence by considering

---

[3] Both Appellant and the Commonwealth requested and received extensions to file their respective appellate Briefs. The Commonwealth ultimately filed a Brief on September 9, 2020.

whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citation omitted).

"Further a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id*. "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id*.

With respect to the issue of identification as the basis for challenges to the sufficiency of the evidence supporting a conviction,

> our courts have held that evidence of identification needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight. Similarly, although identification based solely on common items of clothing and general physical characteristics is insufficient to support a conviction, such evidence may be considered to establish identity along with other circumstances and the proffered identification testimony[.]

*Commonwealth v. Minnis*, 458 A.2d 231, 233 (Pa. Super. 1983) (internal punctuation and citations omitted).

In addition, a victim's identification of an assailant within minutes of the crime is a significant factor to be considered as part of the totality of the evidence. *Commonwealth v. Orr*, 38 A.3d 868, 871, 874 (Pa. Super. 2011).

In addressing Appellant's sufficiency challenge, the trial court observed that the jury found Ms. Smith's testimony credible. Trial Ct. Op., 5/18/20, at at 9-10. The court specifically noted that (1) Ms. Smith had known Appellant for ten or fifteen years because he was a friend of her son; (2) Appellant had been at her house a mere fifteen minutes before the robbery occurred; and (3) she immediately recognized Appellant's voice when he spoke during the robbery.[4] *Id*. at 9. In light of this testimony and other evidence, the court concluded that the Commonwealth presented sufficient evidence for the jury to conclude that Appellant was guilty of the crimes charged. Trial Ct. Op at 10-13.

Our *de novo* review of the record, viewed in the light most favorable to the Commonwealth, supports the court's conclusion. At no time did Ms. Smith exhibit any uncertainty in identifying Appellant as one of the robbers. Ms. Smith had known Appellant for at least 10 years, and Appellant had been visiting her son in her house just minutes before the robbery wearing the same sweatshirt he had on during the robbery. During the robbery, she recognized Appellant's voice and physical build. *See* N.T., 1/3/18, at 90-103. Immediately after the robbery, Ms. Smith identified Appellant to Officer Hustid

---

[4] The trial court also addressed the elements of each crime and the evidence presented to conclude that the Commonwealth presented sufficient evidence to support the jury's verdicts. Appellant has not addressed the elements of the crimes; accordingly, any challenges he may have raised for appellate review with respect to the evidence supporting the specific elements of each crime are waived. *See* Pa.R.A.P. 302(a).

by describing Appellant physically, stating she recognized Appellant's voice, and showing Officer Hustid a picture of Appellant posted on Facebook. N.T., 1/3/18, at 114-15. Moreover, Ms. Smith identified Appellant without hesitation at both the preliminary hearing and the trial as one of the assailants after reiterating she had immediately recognized his voice. When presented during cross-examination with her preliminary hearing testimony, she acknowledged that she had misspoken regarding Appellant's clothing during her direct testimony and stated that it was Appellant wearing the dark gray hoodie and the other man who wore the black hoodie. *See id*. at 105-06.

Appellant attempts to challenge the sufficiency of the evidence by highlighting the inconsistency in Ms. Smith's testimony about the clothing worn by the assailants, and her trial testimony, contradicted by Officer Hustid, that on the day of the crime, Appellant had no facial hair. This argument minimizes the undisputed fact of Ms. Smith's longstanding acquaintance with Appellant and her unwavering recognition of his voice. Appellant's emphasis on inconsistent testimony fails to convince this Court that the jury's verdicts were not supported by sufficient evidence. *See*, *e.g.*, *Commonwealth v. Cain*, 906 A.2d 1242, 1245 (Pa. Super. 2006) (denying sufficiency challenge where it was based on the fact that two witnesses displayed uncertainty at trial as to the appellant's identity after having made previous positive identifications).

Moreover, Appellant's argument raises a challenge to the weight of the evidence, which we address below. Based on the foregoing, Appellant's challenge to the sufficiency of the evidence warrants no relief.

**Weight of the Evidence**

Appellant next contends the verdict was against the weight of the evidence, relying on the same argument he presented in his sufficiency challenge, in addition to a bald averment that the evidence showed "variations and questions of who the actual possessor of the firearm and robbery assailant to have a true rendering of the facts supporting a verdict." Appellant's Br. at 15 (verbatim; no citation to record provided).[5] No relief is due.

When considering challenges to the weight of the evidence, courts apply the following principles. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

---

[5] We note that nowhere else in his Brief did Appellant mention any variation in testimony regarding who had firearms. Our review of the record reveals none; in fact, Ms. Smith testified that both assailants had guns. *See* N.T. at 94.

Further, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the appellant's post sentence motion requesting a new trial based on the weight of the evidence. *Id.* at 545-46. This Court does not review the underlying question of whether the verdict is against the weight of the evidence. *Id*. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id*. at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id*. (citation omitted).

Additionally, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." *Id*. (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

Appellant is asking this Court to reweigh the record evidence and resolve inconsistencies in his favor. Because this Court is not the fact-finder, we

cannot and will not do so.  **Hopkins**, **supra**.  In addition, the verdict does not shock the conscience of this Court and we discern no abuse of discretion in the trial court's denial of Appellant's Post Sentence Motion.  Accordingly, this claim fails.

Because we find no merit in Appellant's sufficiency and weight challenges, we affirm the Judgment of Sentence.

Judgment of Sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>09/28/2020</u>